IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **HAMMEL J. CLARK** | * |
| Plaintiff | * |
| v | *   Civil Action No. RWT-11-1555 |
| **KATHRYN J. JACOBS,** *et al.*, | * |
| Defendants | * |

***

## MEMORANDUM OPINION

Before the court is Defendant Kathryn J. Jacobs and the Maryland Division of Correction's Motion to Dismiss, or in the Alternative Motion for Summary Judgment. *See* ECF No. 7. The matter is fully briefed. *See* ECF Nos. 11, 12 & 15.[1]  Upon review of the papers filed, the court finds a hearing in this matter unnecessary.[2]  *See* Local Rule 105.6 (D. Md. 2011).

## Background

Plaintiff, Hammel Clark, alleges that on an unspecified date Defendant Jacobs, the mail room supervisor at the Western Correctional Institution ("WCI"), improperly opened legal mail outside the Plaintiff's presence. *See* Compl. at 4, ECF No. 1. Plaintiff states that the documents contained information regarding Plaintiff's family, criminal, medical, and psychological history. *Id.* at 6. Plaintiff also states that he suffered "significant hardship on [his] mental state which caused a[n] adverse impact on his ability to continue the case he was litigating." *Id.* at 5, ECF

---

[1] Plaintiff is advised that pursuant to Local Rule 105.3 (D. Md. 2011) "memoranda in support of a motion or in opposition thereto and trial briefs shall not exceed fifty (50) pages, and reply memoranda shall not exceed twenty-five (25) pages, exclusive of (a) affidavits and exhibits, (b) tables of contents and citations, and (c) addenda containing statues, rules, regulations and similar material." Plaintiff's filings are in violation of this rule. In the future, excessively lengthy documents will not be filed but instead be returned to him.

[2] Also pending are Plaintiff's Motions to Amend. ECF Nos. 13 & 17. Because Plaintiff is *pro se*, the Court will interpret these pleadings liberally. *United States v. Garcia*, 65 F.3d 17, 19 (4th Cir.1995). The motions appear to be supplemental oppositions to the dispositive motion rather than true motions to amend the complaint. Accordingly, Plaintiff Motion to Amend [ECF No. 13] and Plaintiff Motion to Amend [ECF No. 17] shall be denied but still be considered as additional oppositions in considering Plaintiff's claims.

No. 1 at 6. Plaintiff alleges that Defendant Jacobs improperly failed to mail legal materials certified mail as requested by Plaintiff in violation of Division of Corrections Directive and Plaintiff's constitutional rights.[3] *Id.* at 7, ECF No. 1 at 7.

Defendants state that on September 19, 2008, Plaintiff filed an emergency request under the Administrative Remedy Procedure ("ARP") in which Plaintiff alleged that the mailroom supervisor did not send his legal mail out as certified mail.[4] *See* Defs. Mot. Summ. J., Decl. of WCI Supervisor Office Processing Kathryn J. Jacobs with Attachments, Ex. 1 ¶ 7, ECF No. 7-2 at 3. In the ARP, Plaintiff stated that he had an active court case and was being denied the right to send certified mail because he was indigent; the WCI mailroom had engaged in misconduct; and the legal mail was not reaching its intended recipient. *Id.* ¶¶ 7-8, ECF No. 7-2 at 3. On October 21, 2008, Plaintiff wrote an inmate request to the Assistant ARP Coordinator and asked that the ARP previously submitted concerning his mail be disregarded and dismissed because he and the mailroom had resolved the issue. *Id* at 29, ECF No. 7-2 at 29. In an undated note, Plaintiff apologized to Defendant Jacobs, indicating he wrote the ARP prior to becoming aware as to why he was unable to send out certified mail.[5] *Id.* at 30, ECF No. 7-2 at 30.

Due to the informal method of Mr. Clark's ARP retraction, the ARP was not withdrawn; on October 24, 2008, Mr. Clark's ARP was investigated. *See* Defs. Mot. Summ. J., Decl. of WCI Case Management Specialist II L.Tennille Winters with Attachments, Ex. 1.A at 7, ECF

---

[3] Plaintiff originally named Defendant Jacobs in a case alleging mail tampering at RCI but provided no specific facts regarding Jacobs in the body of that Complaint, which was dismissed as to Jacobs. *See Clark v. Jacobs*, Civil No. RWT-09-2895, Order June 8, 2011, ECF No. 50.

[4] Defendants rely on dates Plaintiff listed in his Complaint filed in *Clark v. Jacobs*, Civil No. RWT-09-2895. Plaintiff referenced *Clark v. Jacobs*, Civil No. RWT-09-2895 here and offered no specific dates in support of the instant claim. *See* Defs. Mot. Summ. J., ECF No. 7.

[5] Plaintiff indicates that he wrote the ARP because he did not understand WCI rules regarding legal mail. *See* Resp. in Opp'n to Defs. Mot. Summ. J., ECF No. 11.

No. 7-3 at 7. On October 24, 2008, ARP Investigator, Case Management Specialist Rich Roderick, spoke with Defendant Jacobs. *Id.* at 6-7, ECF No. 7-3 at 6-7. Defendant Jacobs stated that the Maryland Office of the Attorney General had advised the institution that certified mail for an indigent inmate would only be issued where the court requested that the mailing be certified. *Id.* at 6, ECF No. 7-3 at 6. The investigator concluded that there was no mandate that Plaintiff's mail be certified and further noted that the court routinely received first class mail from inmates. *Id.* at 7, ECF No. 7-3 at 7. The ARP was dismissed on October 28, 2008 as being without merit. *Id.*

On December 22, 2008, Plaintiff received an Order from the Circuit Court for Allegany County advising him that he must comply with Maryland Rule 2-121(a)(3), which requires service of process to be conducted by certified mail. *See* Defs. Mot. Summ. J., Decl. of WCI Supervisor Office Processing Kathryn J. Jacobs with Attachments, Ex. 1 at 46, ECF No. 7-2 at 46. The Order did not indicate the names of those to be served via certified mail. *Id.*

On March 18, 2009, three certified/restricted mail envelopes were returned to Plaintiff by the mailroom.[6] Ex. 1 at 40-41, ECF No. 7-2 at 40-41. Plaintiff was advised that "3 certified/restricted envelopes being returned to you. *Id.* They do not qualify as a court, attorney or legal mail. *Id.* When you do send out qualified certified mail—the entire white receipt slip needs to be on the front." *Id.* Plaintiff responded to Defendant Jacobs, on the same date, advising her that the mailings were to Defendants in his pending circuit court case. *Id.* at 35-36,

---

[6] Plaintiff indicates that he met with his case manager about his need to use certified mail to serve the Defendants in his state court proceedings. *See* Resp. in Opp'n to Defs. Mot. Summ. J., ECF No. 11. He has attached copies of correspondence dated March 16, 2009, written by him and addressed to his case manager and Jacobs advising them of his need to mail certified letters to effect service of process in his state court case. *See* Resp. in Opp'n to Defs. Mot. Summ. J., Ex C, No. 11-4. He has also attached a memo to him from his case manager dated March 18, 2009, advising him that he had spoken with Jacobs on March 17, 2009, about Plaintiff's need to use certified mail. *Id.*

ECF No. 7-2 at 35-36. He advised that he had a court order to send the documents via certified mail. *Id.* Plaintiff provided a copy of the Circuit Court's Order to Defendant Jacobs. *Id.* Defendant Jacobs was unclear, however, to whom Plaintiff was directed to send the certified mail. *Id.* ¶ 8, ECF No. 7-2 at 2-3. Plaintiff then provided Jacobs with a list of the parties in the case. *Id.* Realizing the error in denying the certified mail as legal mail, Jacobs remedied the error by mailing the three envelopes on March 24, 2009. *Id.* Defendant Jacobs avers that each time Plaintiff complained about mail issues in the WCI mailroom she investigated the concerns and took appropriate action. *Id.*

Defendants maintain that Plaintiff has failed to exhaust his administrative remedies regarding this claim. *See* Defs. Mot. Summ. J., Decl. of Executive Director of the IGO, Scott S. Oakley, Ex. 2 ¶ 3(f), ECF No. 7-4 at 4.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

ECF No. 7-2 at 35-36. He advised that he had a court order to send the documents via certified mail. *Id.* Plaintiff provided a copy of the Circuit Court's Order to Defendant Jacobs. *Id.* Defendant Jacobs was unclear, however, to whom Plaintiff was directed to send the certified mail. *Id.* ¶ 8, ECF No. 7-2 at 2-3. Plaintiff then provided Jacobs with a list of the parties in the case. *Id.* Realizing the error in denying the certified mail as legal mail, Jacobs remedied the error by mailing the three envelopes on March 24, 2009. *Id.* Defendant Jacobs avers that each time Plaintiff complained about mail issues in the WCI mailroom she investigated the concerns and took appropriate action. *Id.*

Defendants maintain that Plaintiff has failed to exhaust his administrative remedies regarding this claim. *See* Defs. Mot. Summ. J., Decl. of Executive Director of the IGO, Scott S. Oakley, Ex. 2 ¶ 3(f), ECF No. 7-4 at 4.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

A.   Failure to Exhaust Administrative Remedies

The Court must next examine Defendants' assertion that the instant action should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies.

The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase

"prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Because complaints regarding the mail encompass the general circumstances of prison life, the exhaustion provision extends to Plaintiff's allegations.  Consequently, Plaintiff's complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that the Defendants have forfeited their right to raise non-exhaustion as a defense.  *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

      The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase*, 582 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

      In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process established by the Division of Correction for its prisoners.  If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction.

If this appeal is also denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code, Title 12, §07.01.03.

The facts regarding Plaintiff's efforts to exhaust his administrative remedies are in dispute. Plaintiff states that he filed a new ARP against Defendant Jacobs on March 26, 2009. This ARP focused on the fact that despite a court order directing Plaintiff to send certified mail, Jacobs denied the request. *See* Resp. in Opp'n to Defs. Mot. Summ. J., ECF No. 11. The ARP was dismissed as repetitive to the initial October 28, 2008 ARP concerning mail delivery. Plaintiff's appeal to the Commissioner was denied pending re-submission with a copy of the October, 2008 ARP. *See* Defs. Mot. Summ. J., Decl. of Executive Director of the IGO, Scott S. Oakley, Ex. 2, ECF No. 7-4. Plaintiff states that he no longer had a copy of the ARP in his possession. *See* Resp. in Opp'n to Defs. Mot. Summ. J. at 6-10, ECF No. 11 at 6-10. He notes, however, that Defendants were in possession of a copy of the October 28, 2008 ARP. *Id.* He wrote to the HQ Coordinator explaining that he no longer had a copy of the ARP and filed an appeal with the IGO. *Id.* At each level of the process, Plaintiff attempted to demonstrate that the March, 2009 ARP concerned a new problem with his mail unrelated to the October, 2008 issue. *Id.* Given this information, the court cannot say that Plaintiff failed to exhaust his available remedies. *See Taylor v. Barnett*, 105 F.Supp.2d 483, 486 (E.D. Va. 2000).

B.     Sovereign Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of

7

another state, unless it consents. *See Penhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. State Gov't Code Ann., § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, Plaintiff's complaint against the Maryland Division of Corrections, an agency within the State of Maryland, is barred by the Eleventh Amendment.

C.     Mail Claims

Courts typically analyze prisoner claims regarding legal mail as access to court claims. To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978). In *Lewis v. Casey*, the Supreme Court clarified the *Bounds v. Smith* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable, but only where the prisoner is able to demonstrate actual injury from such deprivation. *Lewis*, 518 U.S. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id.* at 354. Rather, the *Lewis* Court concluded that *Bounds v. Smith* stood for the proposition that prisoners are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 354. Moreover, to state a claim that the delay or non-delivery of legal mail

deprived him of meaningful access to the courts, a prisoner must allege an adverse consequence resulting from the delay or non-delivery. *See White v. White*, 886 F.2d 721, 724 (4th Cir.1989) (holding that the trial court did not abuse discretion in dismissing prisoner's *pro se* mail-related deprivation of meaningful access to the courts claim because plaintiff failed to allege adverse consequences resulting from the challenged prison policy).

Certainly, the deliberate interference with the posting of some types of outgoing mail by prison staff may state a claim of constitutional dimension. However, occasional incidents of delay or non-delivery of mail do not rise to a constitutional level. *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003) ("[O]ccasional incidents of delay or non-delivery of mail do not rise to a constitutional level."). Nor does the mere negligent interference by correctional officials with an inmate's access to the courts state a cause of action under § 1983. *See Pink v. Lester*, 52 F.3d 73, 75-76 (4th Cir. 1995) (holding that a plaintiff's allegations that prison officials negligently interfered with inmate's due process rights and right to access to the courts, by failing to promptly process money order request from inmate's account was needed to perfect inmate's appeal from forfeiture order, did not constitute a § 1983 civil rights claim). Moreover, the right of access to the courts does not amount to the right to unlimited free postage. *See White*, 886 F.2d at 723. Reasonable regulations of an inmate's right to postage is necessary to balance competing budgetary concerns. *Id*.

Here, there is no evidence that the Defendants acted to interfere with the posting of Plaintiff's mail. Rather, the evidence demonstrates a brief delay in the posting of Plaintiff's certified mail occasioned by a misunderstanding as to whether Plaintiff was authorized to mail

the documents certified. Further, Plaintiff has shown no actual injury or specific harm suffered as a result of the six-day delay in approving his certified mail request. There is no evidence that any adverse action was taken in Plaintiff's state court proceedings due to the brief delay in properly processing Plaintiff's mail. The only evidence Plaintiff offers of injury are conclusory statements that the conduct of Defendants violated his constitutional rights.

Plaintiff's claim that the certified mail envelopes were improperly opened outside of his presence also fails. At the time the envelopes were opened, the mail was determined to be non-legal as it was not addressed to an addressee, classified as a legal mail sender, or recipient as required under the Division of Correction Directive. *See* Defs. Mot. Summ. J., Decl. of WCI Supervisor Office Processing Kathryn J. Jacobs with Attachments, Ex. 1 Attachment B, DOC DOD 250-1, Incoming and Outgoing Mail, ECF No. 7-2 at 63.[7] As such, Jacobs did not understand the letters to be "legal mail." Courts have held that the one-time inadvertent opening of Plaintiff's mail outside of his presence is insufficient to state a claim of a constitutional violation. *See Gardner v. Howard*, 109 F.3d 427,431 (8th Cir. 1997) ("isolated, inadvertent instance of prison personnel opening incoming mail marked confidential 'without any evidence

---

[7] Under to DCD 250-1, legal mail is defined as

> [M]ail from a Court, Judge, Clerk of Court, Attorney-at-Law, the American Civil Liberties Union, Legal Aid Bureau, Commissioner of Correction, elected or appointed official such as the Governor, Attorney General, member of congress, or the Maryland General Assembly, or Department of Public Safety and Correctional Services, or Parole Commission, or Inmate Grievance Commission when received on official stationery of the individual or agency; or mail addressed form an inmate to any of the above individuals or agencies.

Defs. Mot. Summ. J., Decl. of WCI Supervisor Office Processing Kathryn J. Jacobs with Attachments, Ex. 1 Attachment B, DOC DOD 250-1, Incoming and Outgoing Mail, ECF No. 7-2 at 63.

Plaintiff indicates that none of the envelopes in question were so addressed. *See* Resp. in Opp'n to Defs. Mot. Summ. J., ECF No. 11.

of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation) (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)).  Here, the opening of Plaintiff's mail was inadvertent and isolated, and, thus, Plaintiff fails to state a constitutional claim.

D.      Violation of Division of Correction Policy

To the extent Plaintiff claims Defendant Jacobs' actions were in violation of Division of Correction policy, this claim also fails.  Even if the written directives were not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a constitutional violation.  *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987).[8]

## Conclusion

For the aforementioned reasons, Defendants' Motion, construed as a motion for summary judgment, shall be granted.   A separate Order follows.

Date: February 17, 2012                                        /s/
                                                       ROGER W. TITUS
                                                       UNITED STATES DISTRICT JUDGE

---

[8] Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91,94 (5th Cir. 1996).